UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KELLEY-ROSS & ASSOCIATES, INC.,

           Plaintiff,

v.

EXPRESS SCRIPTS, INC.,

           Defendant.

C22-148 TSZ

ORDER

THIS MATTER comes before the Court on a Motion to Dismiss, docket no. 17, filed by Defendant Express Scripts, Inc. ("Express Scripts"). Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following Order.

**Background**

Plaintiff Kelley-Ross & Associates, Inc. ("Kelley-Ross") is a pharmacy group operating a Long-Term Care ("LTC") Pharmacy and a Retail Pharmacy at the Polyclinic Madison Center in Seattle, Washington. Compl. at ¶ 6 (docket no. 1-1). The Retail Pharmacy "is the primary pharmacy provider for a large population of vulnerable patients in Seattle's urban core." Id. at ¶ 8. One service the Retail Pharmacy offers is the "One-

ORDER - 1

Step PrEP"[1] Program, which uses a brand-name drug called Truvada to help people at risk of exposure to the Human Immunodeficiency Virus ("HIV") avoid contracting the virus.  Id.  There is also a "generic" version of Truvada known as Emtricitabine-Tenofovir Disoproxil Fumarate ("ETDF").  Id.

Express Scripts is a Pharmacy Benefit Manager ("PBM"), which serves as an intermediary between a plan sponsor, or what one would commonly think of as an insurance company, and a pharmacy.  Id. at ¶ 11.  Express Scripts serves this intermediary role by processing claims for the insurance coverage of prescription benefits for many plan sponsors.  Id.  To accomplish this, Express Scripts contracts with pharmacies so that they may provide services to a patient whose pharmacy benefits are administered by Express Scripts.  Id. at ¶ 13.

The term "Specialty Drugs" is used to describe drugs that require more comprehensive care and support for patients.  Id. at ¶ 15.  Both Truvada and ETDF are considered Specialty Drugs.  Id.  Kelley-Ross asserts that the higher complexity of the therapies associated with Specialty Drugs "often leads PBMs, like [Express Scripts], to require higher standards for pharmacies that dispense Specialty Drugs, including special credentialing, inspections, and the implementation of stringent and costly medication-handling and patient-monitoring practices designed to protect patients undergoing specialty therapies."  Id. at ¶ 17.

---

[1] "PrEP" stands for "pre-exposure prophylaxis."  Compl. at ¶ 8.

ORDER - 2

Kelley-Ross contends that in December 2016, Express Scripts notified it that to "dispense specialty therapies," both its LTC and Retail Pharmacies would need to undergo additional "Specialty Provider" credentialing and agree to new contractual terms and conditions. Id. at ¶¶ 18 & 21. According to Kelley-Ross, Express Scripts refused to inform it of the reimbursement rates under the new contract until after it went through the Specialty Provider accreditation process. Id. at ¶ 19. It took Kelley-Ross years to complete the Specialty Provider accreditation process for both its pharmacies. Id. at ¶ 21.

Eventually, Kelley-Ross entered into Provider Agreements with Express Scripts for both the LTC and Retail Pharmacies. Compl. at ¶ 26. The Provider Agreements included a "Specialty Amendment to the Express Scripts, Inc. Pharmacy Provider Agreement," a "Specialty Addendum," and an "Attachment 1, Covered Specialty Medications" ("Specialty Attachment").[2] Id. at ¶ 27.

Section 3.1.a of the Provider Agreement states that "[f]or services performed in accordance with the terms and conditions of this Agreement, [Express Scripts] shall pay Provider the agreed upon rates, as set forth in the applicable rate exhibit." Provider Agreement, Ex. B to Stacy Decl. (docket no. 12-1 at 32).[3] The rate exhibit is titled "Exhibit A – ES1000" ("ES1000") and defines "Covered Specialty Medications" as "those Covered Medications that are (i) set forth in the Schedule S Retail Specialty Drug

---

[2] Kelley-Ross refers to all three documents collectively as "Schedule S." Compl. at ¶ 28.

[3] Although Kelley-Ross did not attach the relevant contractual documents to its complaint, Express Scripts attached them to its motion to dismiss. The complaint, however, does reference the contractual documents throughout and neither party has argued that the Court should not consider these exhibits when addressing the pending motion.

ORDER - 3

Program, as further described in [the Specialty Attachment], attached hereto and incorporated herein by this reference; and (ii) covered by Sponsor." ES1000, Ex. E to Stacy Decl. (docket no. 12-1 at 92). Section 2.1(b) of the ES1000 explains how the reimbursements will be calculated for Specialty Medications:

> 2. **Provider Reimbursement for Covered Medications**.
>
> 2.1 For Covered Medications dispensed to Members under this [ES1000], Provider shall receive reimbursement equal to the lowest of the following . . . :
>
> . . .
>
> (b) the applicable AWP[4] discount plus applicable dispensing fee as set forth in Section 2.4 (or per the applicable Supplemental Schedule).

ES1000 (docket no. 12-1 at 92).

If Express Scripts is making the reimbursement under section 2.1(b), then section 2.4 contains the various contract rate tables dictating the reimbursement amount. ES1000 (docket no. 12-1 at 93–96). For specialty medications, however, section 2.4.f directs the parties to the Specialty Attachment:

> 2.4.f Schedule S Retail Specialty Drug Program:  applicable to those Covered Specialty Medications dispensed by Provider to Members of a Sponsor utilizing a Retail Specialty Drug Program option where Provider has been designated as a "Participating Provider" by such Sponsor, as further described in [the Specialty Attachment].

ES1000 (docket no. 12-1 at 96). The Specialty Attachment provides the reimbursement rates for Covered Specialty Medications as follows:

---

[4] Neither the parties nor the contract define the term "AWP."

ORDER - 4

|         | **BRANDS** | **GENERICS - A** | **GENERICS - B** |
|---------|------------|------------------|------------------|
| Year 1  | ███        | ███              | ███              |
| Year 2  | ███        | ███              | ███              |
| Year 3  | ███        | ███              | ███              |

| COVERED SPECIALTY MEDICATIONS |||||
|---|---|---|---|---|
| AFINITOR | GLEEVEC | NEUPOGEN | SEROSTIM | TECFIDERA |
| ATRIPLA | GONAL-F RFF REDI-JECT | NORVIR | SIMPONI | TIVICAY |
| CELLCEPT | HARVONI | ORENCIA | SOVALDI | TRIUMEQ |
| CIMZIA | HUMIRA | OTEZLA | SPRYCEL | TRUVADA |
| COMPLERA | IBRANCE | POMALYST | STELARA | VIEKIRA PAK |
| COPAXONE | INTELENCE | PREZISTA | STRIBILD | VIREAD |
| ENBREL | ISENTRESS | PROGRAF | SUSTIVA | XELJANZ |
| EPZICOM | KALETRA | PULMOZYME | SUTENT | XIAFLEX |
| FOLLISTIM AQ | MENOPUR | REVLIMID | TARCEVA | XTANDI |
| FORTEO | NEULASTA | REYATAZ | TASIGNA | ZYTIGA |

Specialty Attachment, Ex. E to Stacy Decl. (docket no. 12-1 at 100).[5] "Where, 'Brands' are drugs sold under a brand-name label, 'Generic – A' is the same drug sold under a generic name, but produced exclusively by one manufacturer." Compl. at ¶ 29. A "Generic – B" drug is a generic drug that can be produced by any manufacturer. Id. Although the Specialty Attachment provided how reimbursements would be calculated for both Generic – A and Generic – B drugs, the Covered Specialty Medications table listed *only* the names of brand-name drugs. Id. at ¶ 30.

---

[5] Pursuant to the Motion to Seal filed by Express Scripts, docket no. 14, the Court has redacted the pricing terms from the contract provision, which are not necessary for resolving the motion to dismiss.

ORDER - 5

If a specialty medication is not listed in the Covered Specialty Medications table, section 1.3 of the Specialty Attachment explains how the medication will be reimbursed:

> 1.3   **For All Other Covered Medications that are Not a Covered Specialty Medication**.  Participating Provider shall be reimbursed in accordance with the 30 Day and 90 Day (if applicable) rates then in effect for the applicable network configuration utilized by the Sponsor in which Provider participates pursuant to this [ES1000].

Specialty Attachment (docket no. 12-1 at 100).

When the parties signed the agreements at issue, only the brand-name drug Truvada, and not any generic version, was available. Compl. at ¶ 31. On October 1, 2020, the generic drug for Truvada, ETDF, became available. Id. at ¶ 32. When ETDF became available, Kelley-Ross believed that it would be reimbursed for the drug under the calculations provided in the Specialty Attachment for Generic – A drugs. Id. at ¶ 31. Instead, Express Scripts reimbursed Kelley-Ross under the lower rates provided for non-Specialty drugs in the ES1000. Id. at ¶ 31. Kelley-Ross alleges that the amount Express Scripts actually reimbursed it for ETDF was below the amount Kelley-Ross itself was paying to obtain the medication. Id. at ¶ 32. Furthermore, Kelley-Ross was "also incurring significant additional costs to ensure compliance with all the requirements set forth in the Specialty Addendum (such as patient outreach and monitoring)." Id. According to Kelley-Ross, it was losing over $400 per ETDF prescription it filled. Id.

After the parties failed to come to an understanding about how ETDF prescriptions are reimbursed under their contract, Kelley-Ross filed a complaint alleging breach of contract, breach of the covenant of good faith and fair dealing, and violation of the

ORDER - 6

Washington Consumer Protection Act ("CPA").  Id. at ¶¶ 39–53.  Express Scripts now moves to dismiss for failure to state a claim.

**Discussion**

### I. Legal Standard

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The complaint must indicate more than mere speculation of a right to relief.  Id.  When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court."  Id. at 558.  A complaint may be lacking for one of two reasons:  (i) absence of a cognizable legal theory, or (ii) insufficient facts under a cognizable legal claim.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).  In ruling on a motion to dismiss, the Court must assume the truth of the plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor.  Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  The question for the Court is whether the facts in the complaint sufficiently state a "plausible" ground for relief.  Twombly, 550 U.S. at 570.  If the Court considers matters outside the complaint, it must convert the motion into one for summary judgment.  Fed. R. Civ. P. 12(d).  If the Court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

## II.  Breach of Contract

Express Scripts moves to dismiss Kelley-Ross's first claim for breach of contract. To state a claim for breach of contract, a plaintiff must allege (1) a duty imposed by the contract that (2) was breached, with (3) damages proximately caused by the breach. C 1031 Props., Inc. v. First Am. Title Ins. Co., 175 Wn. App. 27, 33, 301 P.3d 500 (2013). Express Scripts argues that Kelley-Ross has failed to state a claim for breach of contract because Kelley-Ross "is misreading the contract." Mot. to Dismiss at 5 (docket no. 17).

The parties essentially dispute whether ETDF qualifies as a Covered Specialty Medication. Under Kelley-Ross's interpretation, ETDF constitutes a Covered Specialty Medication because the brand-name medication, Truvada, is listed on the Covered Specialty Medications table. Kelley-Ross alleges that although the Covered Specialty Medications table listed only brand-name drugs, the listing of the brand-name was intended to include both the brand-name and generic versions of the listed brand-name drug. Kelley-Ross contends that this is why the table in section 1.2 of the Specialty Attachment includes the reimbursement rates for Generic – A and Generic – B drugs, even though the Covered Specialty Medications table listed only brand-name drugs.

On this motion to dismiss, the Court must draw all reasonable inferences in favor of Kelley-Ross. Considering that one of the tables in section 1.2 of the Specialty Attachment listed reimbursement rates for Generic –A and Generic – B drugs even though the Covered Specialty Medications table listed only brand-name drugs, the Court determines that, when drawing all reasonable inferences in Kelley-Ross's favor, Kelley-

ORDER - 8

Ross has alleged a plausible interpretation of the contract.  Although Express Scripts provides a different explanation for why the table includes the reimbursement rates for Generic – A and Generic – B drugs, this does not render Kelley-Ross's interpretation of the contract less plausible.  Additionally, Kelley-Ross's interpretation of the contract does not "nullify and render meaningless the requirement in the 'Covered Specialty Medications' definition that the medications at issue be 'set forth' in Schedule S as described in [the Specialty Attachment]." Mot. to Dismiss at 10 (docket no. 17).  Instead, under Kelley-Ross's interpretation, the generic medications are set forth in the Specialty Attachment via the naming of the corresponding brand-name medication.

Thus, Kelley-Ross alleges that although the contract required Express Scripts to reimburse it for ETDF according to the reimbursement rates provided in the Specialty Attachment, Express Scripts reimbursed it at the rate applicable to non-specialty drugs.  See Compl. at ¶¶ 31 & 42.  Kelley-Ross asserts that Express Scripts's failure to reimburse it at the correct rate caused it to suffer damages.  See id. at ¶ 44.  The Court determines Kelley-Ross has adequately stated a claim for breach of contract.  The motion to dismiss, docket no. 17, as it relates to Count I for breach of contract, is DENIED.

**III.    Breach of the Covenant of Good Faith and Fair Dealing**

Express Scripts also moves to dismiss Kelley-Ross's second claim for breach of the covenant of good faith and fair dealing.  Under Washington law, "[t]here is in every contract an implied duty of good faith and fair dealing" that "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." Badgett v. Sec. State Bank, 116 Wn.2d 563, 569, 807 P.2d 356 (1991).  "[T]he duty of

ORDER - 9

good faith and fair dealing arises when one party has discretionary authority to determine a future contract term." Rekhter v. State, Dep't of Soc. & Health Servs., 180 Wn.2d 102, 112, 323 P.3d 1036 (2014).

The Specialty Attachment provides that "the list of Covered Specialty Medications, including dosage and route forms, may be changed by [Express Scripts] at its sole discretion," that "such change shall not require the consent of, or notice to, [Kelley-Ross]," and that "such change(s) shall automatically become incorporated into this [ES1000], without the necessity of a formal amendment or writing." Specialty Attachment (docket no. 12-1 at 100–01); Compl. at ¶ 25. Kelley-Ross alleges that Express Scripts had a duty to act in good faith regarding this provision of the Specialty Attachment and that Express Scripts "breached its duty by refusing to reimburse Plaintiff for the Generic – A rate for generic-labeled ETDF, interpreting the parties' contract in such a way to deny [Kelley-Ross] of the benefit of its bargain." Compl. at ¶ 47.

Express Scripts argues that the claim for breach of the covenant of good faith and fair dealing fails to state a claim for the same reason as the breach of contract claim. The Court, however, has rejected Express Scripts's argument that Kelley-Ross failed to state a claim for breach of contract. Alternatively, Express Scripts contends that this claim fails because Kelley-Ross "has no allegations that Count II involved some sort of 'discretionary authority.'" Mot. to Dismiss at 13. The complaint, however, clearly alleges that Express Scripts breached its duty of good faith when exercising the discretionary authority afforded it by the Specialty Attachment. Compl. at ¶¶ 46–47.

Nevertheless, the Court concludes that Kelley-Ross has failed to state a claim for breach of the covenant of good faith and fair dealing.  In its Response, docket no. 18, Kelley-Ross asserts that its claim for breach of the covenant of good faith and fair dealing is based on an alternative argument where, "should ETDF not be deemed to be the Generic – A of Truvada for purposes of the Specialty Addendum, then [Express Scripts] who retained and exercised the discretion to change the list of Covered Specialty Medications, failed to do so in a manner that breached its covenant of good faith and fair dealing."  Resp. at 17.  While the Court recognizes this might be sufficient to allege a claim for breach of the covenant of good faith and fair dealing, this is not what Kelley-Ross alleged in its complaint.  Instead, Kelley-Ross merely alleged that Express Scripts breached its duty by "interpreting the parties' contract in such a way to deny [Kelley-Ross] of the benefit of its bargain."  Compl. at ¶ 47.  Because how a party interprets a contract does not relate to an authority to determine a future contract term, the complaint, as currently written, fails to state a claim for breach of the covenant of good faith and fair dealing.  For this reason, the Court DISMISSES the second claim without prejudice and with leave to amend.

**IV.   Violation of the Consumer Protection Act**

Lastly, Express Scripts moves to dismiss Kelley-Ross's third cause of action alleging a CPA violation.  The CPA makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  RCW 19.86.020.  "To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the

ORDER - 11

public interest, (4) injury to a person's business or property, and (5) causation." Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 37, 204 P.3d 885 (2009) (citing Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 784, 719 P.2d 531 (1986)).  Express Scripts argues that Kelley-Ross has failed to adequately plead the first and third elements.

### a. Unfair or Deceptive Act or Practice

As to the first element, whether a certain act or practice is "unfair or deceptive" is a question of law.  Panag, 166 Wn.2d at 47.  The Washington Supreme Court has held that "a claim under the Washington CPA may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest."  Klem v. Wash. Mut. Bank, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013). A plaintiff need only show that the act in question had the capacity to deceive a substantial portion of the public, not that it was intended to deceive.  Panag, 166 Wn.2d at 47.

In its complaint, Kelley-Ross alleges that Express Scripts acted unfairly because its practice of refusing to reimburse pharmacies at the contracted rate for generic specialty medications deprives pharmacies of the ability to dispense those medications without suffering substantial harm.  Compl. at ¶ 50.  Kelley-Ross further alleges that Express Scripts's position and practice is deceptive because Express Scripts unilaterally drafted the parties' contract which "clearly sets forth reimbursement rates for generic specialty medications and [Express Scripts] maintains its ability to update it at any time,

but [Express Scripts] takes the position that such rates are inapplicable to any generic medication that a pharmacy would actually dispense under Schedule S." Compl. at ¶ 51.

Kelley-Ross has not sufficiently pleaded the first element. "Only acts that have the capacity to deceive *a substantial portion* of the public are actionable." Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc., 86 Wn. App. 732, 744, 935 P.2d 628 (1997). "Typically, a breach of contract against a single person does not constitute a Consumer Protection Act violation." Teuscher v. CCB-NWB, LLC, No. 2:19-cv-0204, 2019 WL 5399504, at *2 (E.D. Wash. Oct. 22, 2019). With respect to the first element, Kelley-Ross does not allege any conduct that was directed at the public. Express Scripts's dealings with pharmacies and the contractual terms it agrees to in those relationships do not have deceptive capacity affecting the public in general. See Goodyear Tire & Rubber Co., 86 Wn. App. at 744; see also Segal Co. (E. States), Inc. v. Amazon.Com, 280 F. Supp. 2d 1229, 1233 (2003) ("[T]he fact that defendant may have engaged in additional commercial dealings does not indicate that its activities have the potential to deceive a 'substantial portion' of the public."). For this reason, Kelley-Ross fails to allege the first element of its CPA claim.

### b. Affecting the Public Interest

The Court also concludes that Kelley-Ross fails to allege the third element of its CPA claim. The public interest element requires that there be a likelihood additional persons have been or will be injured in the same fashion. Goodyear Tire & Rubber Co., 86 Wn. App. at 744–45. "Ordinarily, a breach of a private contract affecting no one but

the parties to the contract is not an act or practice affecting the public interest." <u>Hangman Ridge Training Stables, Inc.</u>, 105 Wn.2d at 790.

Kelley-Ross alleges that its contract dispute with Express Scripts affects the public interest by limiting access to medication in vulnerable communities:

> [Express Scripts's] position and practice with respect to generic specialty medications is also detrimental to the public.  The ability of pharmacies to continue dispensing generic specialty medications like the life-saving PrEP drug ETDF/Truvada, while also ensuring that patients taking that medication are provided adequate instruction and monitoring, is of critical importance to vulnerable communities and to the LGBTQIA+ community broadly, which has disproportionately suffered the impacts of HIV/AIDS.  [Express Scripts's] position and practice places those communities' access to important medications in jeopardy.  This practice could also force patients to be steered to [Express Scripts]-owned pharmacies for any potential cost savings, removing local access to care in a highly vulnerable population.

Compl. at ¶ 52.  This allegation, however, does not allege that other people will be harmed *in the same fashion* as Kelley-Ross.  A lack of access to medication in vulnerable communities is a distinctly different injury than what Kelley-Ross has allegedly suffered—namely being under-reimbursed for medication.  Since Kelley-Ross does not allege that other people will likely be injured in the same way that it has been, it has not adequately alleged the third element.

For a CPA claim, all elements must be present and a finding that any element is missing is fatal to the claim.  <u>Goodyear Tire & Rubber Co.</u>, 86 Wn. App. at 743.  Because Kelley-Ross does not sufficiently allege the first or third elements of its CPA claim, that claim is DISMISSED without prejudice and with leave to amend.

//

//

ORDER - 14

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) The Motion to Dismiss, docket no. 17, is GRANTED in part and DENIED in part. The claims for breach of the covenant of good faith and fair dealing and for violation of the CPA are DISMISSED without prejudice and with leave to amend. The motion is otherwise DENIED.

(2) Any amended complaint shall be filed within thirty (30) days of the date of this Order.

(3) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 3rd day of June, 2022.

Thomas S. Zilly
United States District Judge

ORDER - 15